IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES ROBERT TICE )
          Petitioner, )
      v. ) C.A. No. 03-9Erie
         ) District Judge McLaughlin
HARRY WILSON, Warden, ) Magistrate Judge Baxter
         Respondent. )

## MEMORANDUM ORDER

### Procedural History

The instant petition for writ of habeas corpus was received by the Clerk of Court on January 10, 2003, and was referred to United States Magistrate Judge Susan Paradise Baxter for report and recommendation in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrates.

In his petition for writ of habeas corpus, Petitioner notes that he was charged with two separate and distinct counts of rape, criminal attempted involuntary deviate sexual intercourse, indecent assault, and corruption of a minor. Specifically, at 3207 of 1998, Petitioner was charged with acts occurring between May 13th and August 9th of 1997 (hereafter, "the general charge"), and at 3206 of 1998, Petitioner was charged with acts occurring during the weekend of August 9-11, 1997 ("the date specific charge"). Petitioner was convicted by a jury of both charges. The sole claims presented by Tice in his amended petition are a claim that counsel was ineffective for failing to obtain records from the juvenile detention facility where Tice was housed, and that the Commonwealth committed a Brady violation by failing to turn those records over to the defense during discovery.

After a review of the pleadings in this case, Magistrate Judge Baxter held an evidentiary hearing on September 9, 2004, to address the issues raised in the amended petition. The parties filed post-hearing briefs, and Magistrate Judge Baxter issued a Report and Recommendation on March 29, 2005, recommending that the petition be dismissed and that a certificate of appealability be denied. Document # 28. Petitioner filed Objections to the Report and

1

Recommendation, and attached thereto were affidavits from both of Tice's sisters. Document # 29. In light of these affidavits, the undersigned concluded that further development of the record was appropriate and remanded the case back to the Magistrate Judge. Document # 31. Accordingly, Magistrate Judge Baxter held a second evidentiary hearing on September 7, 2005, at which Judy Tice and Karen J. testified.

On February 9, 2006, the Magistrate Judge issued a second Report and Recommendation in which she recommended that the petition be granted as to the crimes charged at No. 3206 of 1998 (the date specific charge of August 9-11), and that the petition be denied as to the crimes charged at No. 3207 of 1998 (the general charge of May 13 - August 9). Document # 39. The previous Report and Recommendation was withdrawn. The parties were advised that they had ten days in which to file Objections to the Report and Recommendation and an additional seven days in which to file a response to opposing counsel's objections.

Respondent, through the District Attorney's office, failed to file Objections to that portion of the Magistrate Judge's Report and Recommendation which recommended granting relief to Petitioner. Petitioner, however, filed timely Objections to that portion of the Report and Recommendation which recommended the denial of Petitioner's request for relief as to the crimes charged at 3207 of 1998. We also note, parenthetically, that Respondent did not file a response to the arguments raised in the Petitioner's Objections to the Report and Recommendation.

### The Court's Standard of Review

Normally, a district court reviews the findings of fact and conclusions of law of the Magistrate Judge under a *de novo* standard which means that the district judge makes "an independent determination of the issues." United States v. Irvin, 906 F.2d 1424, 1426 (10th Cir.1990). See also In re Paoli R.R. Yard PCB Litigation, 221 F.3d 449, 461 (3d Cir. 2000) ("De novo means here, as it ordinarily does, that the court's inquiry is not limited to or constricted by the record, nor is any deference due the conclusion under review."). By virtue of

Respondent's failure to file Objections to that portion of the Magistrate Judge's Report and Recommendation recommending the granting of habeas relief, the Respondent has waived its right to have this Court conduct a *de novo* review of the factual and legal conclusions which form the basis for that aspect of the Magistrate Judge's decision. Instead, the scope of our review is far more limited and is conducted under the far more deferential standard of "plain error." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) ("While this statutory provision [28 U.S.C. § 636(b)(1)(C)] may not require, in the absence of objections, the district court to review the magistrate's report before accepting it, we believe that the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report."); Cobbs v. Wynder, 2006 WL 559449, at *1 (M.D. Pa. 2006) ("[W]hen no objections are filed, the district court is required only to review the record for 'clear error' prior to accepting a magistrate judge's recommendation."); Oldrati v. Apfel, 33 F.Supp.2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection, therefore, this Court will review Magistrate Judge Hart's Report and Recommendation for 'clear error.'"); Cruz v. Chater, 990 F.Supp. 375, 377 (M.D. Pa. 1998) ("[B]ecause *de novo* consideration of issues is limited to those matters to which specific objection is made, it necessarily follows that interests of judicial economy, efficiency and finality support a limited review of the record on which a magistrate judge's report and recommendation is based where *no* objection has been filed."). See also Fed.R.Civ.P. 72, Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In order to satisfy this deferential standard, the error must have been "clear" or "obvious" and seriously affect the fairness or integrity of the judicial proceedings. United States of America v. Sargeant, 2006 WL 760269, at *2 fn. 4 (3d Cir. 2006).

## Discussion

In his amended petition, Petitioner argues that his trial counsel was ineffective for failing to obtain records from the juvenile detention facility where Tice was housed, and that the

Commonwealth committed a Brady violation in failing to turn those same records over to the defense in discovery.  Specifically, Petitioner argues that the Hermitage House records show: (1) Tice was not released from the facility as often as the victim remembered during the summer of 1997; and (2) more importantly, that the records reflect Tice was released from the juvenile detention facility during the weekend of August 9-11, 1997, but that he spent that weekend at his sister Judy's home, and not at his sister Karen's house (i.e., the location of the victim in this case).  Petitioner argues, therefore, that the Hermitage House records would have provided Tice with an alibi defense to the charge that he committed an assault during the weekend of August 9-11 and would also have served to impeach the victim's testimony concerning the frequency with which he visited her home during the summer of 1997.

  As recognized by the Magistrate Judge, neither of these issues had been raised in the state courts and both issues are therefore unexhausted.  Further, because Petitioner is now foreclosed from bringing these claims before the state courts, they are procedurally defaulted thereby generally precluding review in federal court. A procedurally defaulted claim may be reviewed on its merits by the federal courts if the failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991); Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995).  A federal court may exercise its discretion to correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably resulted in the conviction of one who is actually innocent."  Murray v. Carrier, 477 U.S. 478, 496 (1986).  See also Coleman, 501 U.S. at 748; McCleskey v. Zant, 499 U.S. 467, 502 (1991) .

  Under the "miscarriage of justice" standard, a petitioner must present new evidence of innocence to  persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298, 327 (1995).  To succeed on a fundamental miscarriage of justice argument, a petitioner must invoke "reliable evidence not presented at trial," Calderon v. Thompson, 523 U.S. 538, 559 (1998), to "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." Schlup, 513 U.S.

4

at 327. The Schlup standard "for proving actual innocence is far more demanding than establishing the existence of a reasonable doubt." Mattis v. Vaughn, 80 Fed.Appx. 154, 159 (3d Cir. 2003). Only after the Schlup standard is satisfied may the federal court examine the merits of the procedurally defaulted claim, in this case, the ineffective assistance of trial counsel for failure to investigate.

In her second Report and Recommendation, Magistrate Judge Baxter concluded that trial counsel's ineffectiveness in his failure to investigate Petitioner's whereabouts met the Schlup standard as to the date specific charge, i.e. August 9-11th (and ultimately that the claim warranted habeas relief on its merits under Strickland v. Washington, 466 U.S. 668 (1984)). Magistrate Judge Baxter examined the Hermitage House records which suggested that Petitioner was not released to the home of the victim on the August weekend of the date specific charge (i.e., August 9-11). Having reviewed the Magistrate Judge's findings of fact and conclusions of law under the deferential "plain error" standard given the lack of Objections from Respondent, we find no "plain error" with respect to the recommendation that relief be granted to Petitioner as to the date specific charge of 3206.

We now turn to address Petitioner's Objections to the recommendation of the denial of relief relative to the general charges at 3207. In finding that the Schlup standard was not satisfied as to the general charge, the Magistrate Judge explained

> Importantly for the outcome in this case, this same analysis does not apply to the charges stemming from the earlier [more general] dates. Tice has not presented evidence of a fundamental miscarriage of justice as to the charges in general. What he has presented is evidence that he was actually innocent of the second set of charges brought against him, i.e., that he sexually assaulted his niece during the weekend of August 9-11, 1997. The evidence in this case supports a finding of manifest injustice only with respect to those later charges.

Document # 39, page 24 fn.11.

In his Objections, Petitioner argues the new evidence, the Hermitage House records, establishes that someone besides Petitioner sexually assaulted the victim. "[T]he records could have been used to establish that the Commonwealth's expert medical testimony established that someone other than Jim sexually assaulted Jennifer. The use of the records, coupled with the

5

impeachment of Jennifer's testimony, would have prevented any reasonable juror from finding Jim guilty beyond a reasonable doubt on the general charges." Document # 40, page 7. Having carefully considered this matter, we conclude that, as to the general charge, the Hermitage House records do not establish Petitioner's innocence within the meaning of <u>Schlup</u>.

Petitioner relies heavily on the testimony of Commonwealth witness Dr. Justine Schober, a pediatric urologist, who testified that her physical examination of Jennifer on September 12th revealed three physical distinct injuries: 1) a healed tear at the six o'clock position of the hymen, which Schober testified was "probably older than six months" because the scar had devascularized; 2) a transection of the hymen on the right side where the hymen had healed against the vaginal wall, which Schober testified she "really couldn't date..."; and 3) a red healing injury on the right lateral wall of the vagina, which Schober testified: "It's just healing, it could be under seventy-two hours, or [...] I would say it could be a few weeks old maybe." Document # 17, Exhibit G, pages 56-64.

We disagree with Petitioner's argument that Dr. Schober's testimony is supportive of Petitioner's innocence within the meaning of <u>Schlup</u>. First, the testimony of Dr. Schober concerning the age of the various injuries was understandably less than precise. Second, the Hermitage House records reveal that Petitioner was released to the home of the victim on the weekends of June 13th and July 27th. See Exhibit VV, page 2 of 6. Since Dr. Schober testified that she could not date one injury, an assault perpetrated by Petitioner during the time period encompassed by the more general charge is not precluded. Third, we reject Petitioner's argument that the Hermitage House records impeachment value met the <u>Schlup</u> standard and agree with the Magistrate Judge's discussion of the same at page 25 of the Report and Recommendation. Fourth, Petitioner's claim that Dr. Schober's testimony establishes that someone other than the Petitioner perpetrated the assaults is belied by our discussion above relative to the general charge. Moreover, the fact that someone other than the Petitioner may have assaulted Jennifer is not exonerative of the Petitioner.

Consequently, as to the general charge at 3207, this Court finds that Petitioner has failed to show that a fundamental miscarriage of justice will occur if the procedural default of his

claim is not excused.

## Conclusion

AND NOW, this 31st day of March, 2006;

For the reasons set forth in the accompanying memorandum order,

IT IS HEREBY ORDERED that the Report and Recommendation dated February 9, 2006, be adopted as the opinion of this Court.  A certificate of appealability is denied.

S/ Sean J. McLaughlin<br>
SEAN J. MCLAUGHLIN<br>
UNITED STATES DISTRICT JUDGE