**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2502
_____

JAMES ROBERT TICE,

Appellant

v.

HARRY E. WILSON, Warden; THE DISTRICT ATTORNEY OF THE
COUNTY OF ERIE, PENNSYLVANIA; THE ATTORNEY GENERAL OF THE
COMMONWEALTH OF PENNSYLVANIA

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. No. 03-cv-00009E)
District Judge: Hon. Sean J. McLaughlin

Submitted under Third Circuit LAR 34.1(a)
on January 18, 2008

Before: SCIRICA, Chief Judge, BARRY and ROTH, Circuit Judges

(Filed: May 7, 2008)

O P I N I O N

**ROTH, <u>Circuit Judge</u>:**

James Robert Tice appeals the District Court's order dismissing in part his petition for a writ of habeas corpus. We will affirm the order because Tice has failed to show a miscarriage of justice sufficient to overcome the procedural default of his claim for relief.

**I. <u>Background and Procedural History</u>**

At a bench trial in the Court of Common Pleas of Erie County, Pennsylvania, Tice was convicted of two sets of charges, one related to acts of molestation occurring between May 13 and August 8, 1997 (case number 3207), and the second to such acts occurring from August 9 to 11, 1997 (case number 3206). The dates in question reflect instances in which Tice was alleged to have committed sexual acts with his niece when staying at his sister Karen's house while he was on approved leave from Hermitage House, the juvenile facility where he resided at the time.

Of relevance to this appeal, in the present habeas petition, Tice raises ineffective assistance of counsel claims, which were not presented to the state courts. Tice argues that his trial counsel was ineffective in part for failing to obtain the records from Hermitage House concerning the dates on which Tice was released on home visits. These records indicate that Tice spent the weekend of August 9-11, 1997, at his sister Judy's house, and the weekends of June 13-15, 1997, and July 25-27, 1997, at Karen's. As such, the Hermitage House records suggested that Tice could not have committed the crimes charged in case 3206

because he was not at Karen's on the weekend of August 9-11, 1997, when the molestation supposedly occurred.

Following an evidentiary hearing, at which both of Tice's sisters testified, and the preparation of a Report and Recommendation by the Magistrate Judge, the District Court granted Tice's habeas petition with respect to case 3206 but denied it as to case 3207.[1] The District Court found that Tice's claims for relief had been procedurally defaulted because he had not brought those claims before the state court. The District Court then considered whether failure to review Tice's claims would result in a fundamental miscarriage of justice, such that his claims, although defaulted, could nonetheless be reviewed. The District Court concluded that no such miscarriage of justice would result with respect to Tice's claim for relief from his conviction in case 3207 because the Hermitage House records did not sufficiently establish Tice's innocence with respect to those charges.[2]

---

[1] The District Court actually held two evidentiary hearings on Tice's claims. The First Report and Recommendation recommended that Tice's habeas petition be denied as to both charges. In his subsequent objections, Tice included affidavits from both of his sisters that bolstered the reliability of the Hermitage House records. The District Court then held a second evidentiary hearing, after which the Magistrate Judge issued a Second Report and Recommendation.

[2] In so doing, the District Court rejected Tice's argument that the testimony of a pediatric urologist, Dr. Justine Schober, concerning the age of the various injuries to the victim supported his innocence. The District Court found that Dr. Schober's testimony about the age of those injuries was "less than precise" and that, because Dr. Schober testified that one injury was undated and, according to the Hermitage House records, Tice had been at the victim's house in June and July, an assault by Tice as charged in case 3207 was not precluded. The District Court accordingly rejected Tice's claim that Dr. Schober's testimony established that someone other than Tice had committed the crimes and noted that the fact that someone other than Tice could have assaulted the victim did not exonerate him.

Tice timely appealed the District Court's order. We granted a certificate of appealability on the issue of whether Tice has established a miscarriage of justice with regard to case number 3207 (the charges related to May 13 through August 8, 1997) sufficient to overcome the procedural default of his ineffectiveness claim.

## II. Jurisdiction and Standard of Review

We have jurisdiction over Tice's timely appeal under 28 U.S.C. §§ 1291 and 2253. We exercise plenary review over the District Court's determination of the procedural default issue. *Hull v. Kyler*, 190 F.3d 88, 97 (3d Cir. 1999).

The claims raised by Tice in his habeas petition that are of relevance to the issue on appeal were procedurally defaulted. A federal court generally will not review a procedurally defaulted constitutional claim raised in a petition for a writ of habeas corpus. *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004) (citations omitted). There is an exception to this rule, however, where the petitioner "can show cause and prejudice for the procedural default or that a miscarriage of justice will occur absent review. An allegation of 'actual innocence,'

---

The District Court also rejected Tice's assertion that he was entitled to relief because the Hermitage House records could have been used to impeach the victim's testimony. The victim testified that Tice had assaulted her over a period of eighteen months, whereas the records indicate that he could not have assaulted her over such a period. The District Court found that this information was "not sufficiently at odds with the eleven-year-old victim's testimony to offer any real impeachment value." The District Court also concluded that establishing the inaccuracy of the victim's memory regarding the time frame of the alleged abuse did not meet the "fundamental miscarriage of justice" standard.

4

if credible is one such 'miscarriage of justice' that enables courts to hear the merits of the habeas claims." *Id.* (internal quotations omitted).

In *Schlup v. Delo*, the Supreme Court held that, to overcome a procedural default based on a claim of actual innocence, a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 513 U.S. 298, 327 (1995). The petitioner must show that, in light of new evidence of innocence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* Tying the miscarriage of justice exception to the petitioner's innocence ensures that the exception will "be applied in the extraordinary case" and "extend relief to those who [are] truly deserving." *Id.* at 321.

## III. Analysis

We agree with the District Court that, with respect to case number 3207, Tice has failed to show that, in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him of the offenses charged.

In case number 3207, Tice was charged regarding acts occurring between May and August 1997. The new evidence (in particular the Hermitage House reports) indicates that Tice was only at the victim's home on the weekends of June 13-15, 1997, and July 25-27, 1997.

This evidence, in view of the additional evidence presented at trial, does not establish a likelihood that no reasonable juror would have convicted Tice of the offenses charged in

case number 3207. The dates on which Tice stayed at the victim's home, as shown by the new evidence, still fall within the time frame in which the charged activities occurred. The victim herself testified that Tice had assaulted her. We agree with the District Court that the fact that Tice had not visited her as often as she stated in her testimony would have been of little impeachment value, given that the jury was well aware she was an eleven-year-old girl testifying as to events that had occurred about two years earlier.

Nor does the new evidence render Dr. Schober's testimony as to the dates of the victim's injuries supportive of Tice's innocence. At trial, Dr. Schober testified that, during her September 1997 examination of the victim, she identified three injuries, one of which was "probably older than six months," one that was "under seventy-two hours . . . or a few weeks old," and another that could not be dated. This testimony does not, even in light of the Hermitage House records, establish that no reasonable juror would likely have convicted Tice. Dr. Schober's testimony regarding the age of the injuries was admittedly and understandably imprecise. This testimony is not inconsistent with the new evidence regarding what dates Tice was at the victim's home and therefore could have committed the crimes charged, as testified to by the victim herself.

Tice has not shown that it is more likely than not that no reasonable juror would have convicted him even in light of the new evidence. As such, he failed to establish his actual innocence for purposes of the fundamental miscarriage of justice standard, and we cannot

overlook his procedural default and reach the merits of his ineffective assistance of justice claim.

## IV. Conclusion

For the reasons set forth above, we will **affirm** the order of the District Court.